UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
THORNAPPLE ASSOCIATES, INC.            :
                                       :
                    Plaintiff,         :
                                       :
v.                                     :     **OPINION & ORDER**
                                       :     06 Civ. 6412(JFK)
                                       :
PETER D. SAHAGEN and SAHAGEN           :
CONSULTING GROUP, LLC,                 :
                                       :
                    Defendants.        :
---------------------------------------X

**JOHN F. KEENAN, United States District Judge:**

>        Plaintiff Thornapple Associates, Inc. ("Thornapple")
commenced this action against Defendants Peter Sahagen and
Sahagen Consulting Group, LLC (collectively, "Sahagen", or
"Defendants") to recover $115,005.46, plus accrued interest, in
unpaid charges for expert witness consulting services rendered by
Thornapple on Sahagen's behalf during a securities arbitration in
which Sahagen was a claimant.  Pursuant to Rule 64 of the Federal
Rules of Civil Procedure and New York's Civil Practice Law and
Rules ("CPLR") sections 6201(1) and 6212(a), Thornapple moved for
pre-judgment attachment of funds that had been paid or were about
to be paid to Sahagen as a result of a settlement award obtained
by Sahagen in an unrelated case pending in the Southern District.
By Order dated February 22, 2007, the Court granted Thornapple's
motion and ordered an attachment in the amount of $140,000 from
the settlement award.  This Decision, fully setting forth the

reasons for the Court's Order, follows.

**BACKGROUND**

The following undisputed facts are derived from the parties' pleadings, affidavits and exhibits offered in support of and opposition to the motion for attachment.

Thornapple is a New Jersey consulting firm that provides expert witness services, primarily in arbitrations concerning investment disputes.  Defendant Peter Sahagen is a California resident who is the sole member of Defendant Sahagen Consulting Group LLC, a Delaware limited liability company with an office in California that is not registered in New York.  In late 2003, an attorney for Sahagen, Brian Wille ("Wille"), contacted Thornapple to discuss the possibility of Thornapple's providing expert rebuttal witness services on Sahagen's behalf in a pending securities arbitration, in which Sahagen, as claimant, was seeking approximately $400 million in damages from Salomon Smith Barney.  Thornapple agreed to act as Sahagen's consultant and, on December 1, 2003, began to perform work on Sahagen's behalf.

Thornapple has submitted detailed time and disbursement entries for the work it performed on Sahagen's securities arbitration.  The records show that, from December 2003 until the end of September 2004, Thornapple was called upon to perform only a minimal amount of work.  On September 29, 2004, Wille sent

Thornapple a retainer payment of $10,000 from funds deposited by
Sahagen in his attorney's retainer account.  On September 30,
2004, Thornapple sent Wille a retainer agreement, providing <u>inter
alia</u> that Thornapple would charge Sahagen at a rate of $375 per
hour for its services plus expenses.  Wille confirmed that the
retainer agreement had been sent to Sahagen for Sahagen to sign.
However, Thornapple never received the signed retainer agreement
back from Sahagen.  Nevertheless, Thornapple continued to work on
the arbitration.  Thornapple's work increased substantially
during the fall of 2004.  During that time, Thornapple's vice-
president, Robert Conner ("Conner") met frequently with Wille,
other attorneys representing Sahagen, and Peter Sahagen himself
in preparation for Conner's testimony as an expert witness at an
upcoming deposition and at the arbitration hearing.  During these
meetings, Conner stated to Wille that Conner wanted Sahagen to
sign Thornapple's retainer agreement.  Wille assured Conner that
"Sahagen would sign and return the agreement, that [Conner] was
at no risk of not being paid for Thornapple's services, and that
Sahagen was a multi-millionaire capable of paying." (Affidavit of
Robert Conner ("Conner Aff."), ¶ 7.)  At the arbitration hearing,
Conner also expressed to Peter Sahagen his concerns regarding the
unsigned retainer agreement, but Sahagen assured Conner that
Thornapple would be paid for its services.

On December 13, 2005, Thornapple received an additional

3

payment of $30,000 from Sahagen's attorneys.  Thornapple continued to provide expert witness services until April 27, 2005, when Conner concluded his testimony at the arbitration hearing.

Thornapple's time records show that from December 1, 2003, when Thornapple began to work for Sahagen, until April 27, 2005, when the work concluded, Thornapple performed approximately 411 hours of billable work for Defendants at a rate of $375 per hour, and incurred approximately $742 in out-of-pocket expenses, for a total charge of $155,005.46.

Thornapple sent Sahagen an invoice on June 1, 2005, which provided a detailed accounting of the billable time expended and out-of-pocket expenses incurred by Thornapple and stated the outstanding balance of $115,006.46, a sum equal to the total charge less the $40,000 in payments that Sahagen had remitted.  Sahagen did not respond to the June 1, 2005 invoice. In November 2005, Sahagen's arbitration was resolved in Salomon Smith Barney's favor, and Sahagen received no award.  From January 2006 to July 2006, Thornapple sent six invoice reminders to Sahagen.  In addition, in July 2006, Conner sent a letter to Sahagen's attorney in which Conner offered to meet with Sahagen in Los Angeles to discuss setting up a payment schedule for the outstanding balance.  Neither Sahagen nor his attorneys responded to the repeated invoice reminders or to Conner's invitation to

meet.

Thornapple commenced this action on August 23, 2006 with the filing of a summons and a complaint, in which Thornapple asserted claims for an account stated against Defendants, breach of contract, quantum meruit, and unjust enrichment.  On December 15, 2006, Thornapple applied to the Court for pre-judgment attachment of a portion of the funds to be paid to Sahagen from a settlement awarded to Sahagen in Sahagen v. Tilles, No. 06 Civ. 03119 (HB) ("Tilles"), an unrelated case before Judge Harold Baer in the Southern District, on the grounds that Defendants were non-domiciliaries of New York and attachment was required in aid of continuing security pending final judgment.  Thornapple requested that $131,390.29 of the settlement award be attached, an amount that comprised the $115,005.46 outstanding balance, plus accrued interest.  By Order dated February 22, 2007, the Court granted Thornapple's motion, ordered that the sum of $140,000 from the Tilles settlement be attached, and further ordered that Thornapple post an undertaking of $10,000.   This Decision follows.

**DISCUSSION**

*Legal Standard*

Under Rule 64 of the Federal Rules of Civil Procedure, attachment is available as a remedy "under the circumstances and in the manner provided by the law of the state in which the

5

district court is held." Fed. R. Civ. P. 64.  Thus, New York's law governing the issuance of attachments applies in this case. Section 6201(1) of the New York CPLR provides, in relevant part, that an order of attachment may be granted when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. CPLR § 6201(1).  Section § 6212 further requires that a plaintiff seeking a pre-judgment attachment show "[1] that there is a cause of action, [2] that it is probable that plaintiff will succeed on the merits . . . and [3] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. CPLR § 6212(a).

The provisional remedy of attachment is "a harsh remedy which should be construed strictly against those seeking to use it" and is "discretionary with the trial court." Reading & Bates Corp. v. Nat'l Iranian Oil Co., 478 F. Supp. 724, 726 (S.D.N.Y. 1976) (citations omitted).  Thus, even if a plaintiff meets the statutory requirements set forth in CPLR sections 6201(1) and 6212(a), "it would still be possible to deny the harsh remedy of attachment." Thornock v. Kinderhill Corp., 712 F. Supp. 1123, 1132 (S.D.N.Y. 1989) (citations omitted).

"New York law clearly recognizes that § 6201(1) serves two independent purposes:  obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state." Ames v. Clifford, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) (citations and internal quotations omitted).  Here, the

6

Defendants have answered Thornapple's complaint, and it is undisputed that jurisdiction already exists.  Thornapple thus seeks attachment solely as security for a judgment that may be entered in its favor.  Where a pre-judgment attachment is sought solely for the purpose of providing security, "a different analysis should apply than that used for jurisdictional attachments." Reading & Bates Corp., 478 F. Supp. 724 at 726.  In such circumstances, "attachment should issue only upon a showing that drastic action is required for security purposes." Buy This, Inc. v. MCI Worldcom Communs., Inc., 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001)(citations and internal quotations omitted);see also Ames v. Clifford, 863 F. Supp. at 177 ("New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of the enforcement of a future judgment.") (citations omitted).

Accordingly, the Court first must determine whether Thornapple has met the statutory requirements for attachment set forth in CPLR sections 6201(1) and 6212(a).  If Thornapple has satisfied those statutory requirements, the Court next must determine whether Thornapple has made a sufficient additional showing that attachment is needed for security purposes.

*Statutory Requirements*

*CPLR Section 6201(1)*

Thornapple moves for attachment on the sole ground that

7

Defendants are non-domiciliaries of New York.  Thornapple
asserts, with record support, and Defendants do not dispute, that
Sahagen Consulting, LLC is a Delaware company that is not
registered in New York and that Peter Sahagen is a resident of
California.  Therefore, Thornapple has made the showing required
by CPLR § 6201(1) that Defendants are non-domiciliaries.

*CPLR Section 6212(a)*

Thornapple also meets the statutory requirements
enumerated in CPLR § 6212.

First, Thornapple has stated a cause of action on its
account-stated claim.  "The standard for determining whether a
cause of action exists for purposes of attachment under New York
law is a liberal one.  Unless the plaintiff's papers clearly
establish that the plaintiff must ultimately be defeated, a cause
of action exists." Algonquin Power Corp. v. Trafalgar Power, No.
5:00 Civ. 1246, 2000 U.S. Dist. LEXIS 20331, at *21 (N.D.N.Y.
Nov. 8, 2000).  Here, it is undisputed that Thornapple's
complaint states a cause of action for a claim of account-stated,
which is an "'agreement, express or implied, . . . independent of
the underlying agreement, as to the amount due on past
transactions'." Peter L. Leepson, P.C. v. Allan Riley Co., No .
04 Civ. 3720, 2006 U.S. Dist. LEXIS 52875, at * 11 (S.D.N.Y. July
31, 2006) (quoting 1 N.Y. Jur. 2d Accounts & Accounting § 10
(West 2006)).  Under a claim for an account stated, "[e]ven
though there may be no express promise to pay, yet from the very

8

fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing." Id.  In order properly to plead an account-stated claim, a complaint must include allegations that:  (1) an account was presented, (2) it was accepted as correct, and (3) debtor promised to pay the amount stated. Peter L. Leepson, P.C., 2006 U.S. Dist. LEXIS 52875, at *11 (citation omitted).  The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if "a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999).

Thornapple's complaint includes allegations that Thornapple sent and Sahagen received an invoice for work performed by Thornapple on Sahagen's behalf; that Sahagen never objected to the invoice; and that Sahagen made partial payments to Thornapple on the account, totaling $40,000.  Thus, Thornapple has successfully stated a claim for an account-stated based upon an implied agreement between the parties.

Second, Thornapple has shown a likelihood of success on the merits of its account-stated claim.  To show probability of success on the merits for purposes of an application for an order of attachment, the moving party must demonstrate that it is more likely than not that it will succeed on its claims. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Baninvensa Capital Markets,

<u>Ltd.</u>, No. 94 Civ. 2778, 1995 U.S. Dist. LEXIS 8811, at *1
(S.D.N.Y. June 26, 1995).  Specifically, Thornapple must show
proof stronger than that required to establish a prima facie
case. <u>Donaldson Lufkin & Jenrette Securities Corp. v. Burgess</u>,
No. 92 Civ. 1174, 1992 U.S. Dist. LEXIS 2322, at *3-4 (S.D.N.Y.
Mar. 2, 1992).

  Thornapple's submissions in support of the motion for
attachment, comprising the affidavits of Conner and Thornapple's
attorney, Dennis Rothman, as well as ample documentary evidence,
establish that Sahagen engaged Thornapple; that Sahagen received
Thornapple's retainer agreement without objection or other
comment apart from the assurance, given by both Sahagen and his
attorneys, that Thornapple would be paid for its labor; that
Thornapple expended approximately 400 hours of work on Sahagen's
behalf at a rate of $375 per hour; that Sahagen made partial
payments on Thornapple's outstanding charges; that Thornapple
invoiced Sahagen for the unpaid balance; and that Sahagen
received the invoice and repeated invoice reminders without
objection or other comment and did not pay the amount owed to
Thornapple.  These facts, which Defendants do not dispute, tend
to prove the elements for a claim of account-stated, as discussed
above, and indicate that it is more likely than not that
Thornapple will prevail on the merits of its account-stated
claim.

  Sahagen argues that Thornapple is unlikely to succeed
on the merits because (1) Sahagen never signed the retainer

10

agreement and therefore assumed that the fact that Thornapple

"continued to bill [Sahagen] under a retainer agreement [Sahagen]

had refused to sign . . . was a clerical error"; (2) Sahagen

believed that the $40,000 paid to Thornapple was "more than

sufficient compensation"; and (3) Thornapple's services were "of

inferior quality, and, in fact, severely damaged [Sahagen's]

chances or success in the arbitration, which ultimately was

lost." (Affidavit of Peter D. Sahagen in Opposition to Motion for

Attachment ("Sahagen Aff.") ¶¶ 6, 7.)

     Sahagen's arguments are without merit.  Any objection

made by Defendants to the validity of the account stated by

Thornapple, whether as to the amount charged by Thornapple or the

quality of Thornapple's work, arrives far too late.  "An

objection to an account stated that is first made only after

litigation on the account stated has been commenced is, as a

matter of law, not made within a reasonable time." White Diamond

Co. v. Castco, Inc., No. 02 Civ. 9991, 2006 U.S. Dist. LEXIS

43332, at *22 (S.D.N.Y. June 26, 2006) (citing Regent Partners,

Inc. v. Parr Dev. Co., Inc., 960 F. Supp. 607 (E.D.N.Y. 1997)).

During the 17-month period in which Thornapple performed over 400

hours of work for Sahagen, Sahagen did not object to the quality

or price of Thornapple's work.  During the period of

approximately 15 months between Thornapple's submission of its

June 1, 2005 invoice and the commencement of this action, Sahagen

remained obdurately silent while Thornapple made repeated

attempts to collect the outstanding balance.  Moreover, even

after Thornapple filed its complaint, Sahagen did not offer an express objection to the account stated by Thornapple. Defendants' answer to Thornapple's complaint consisted of general denials and did not include any affirmative defenses, except for the single affirmative defense of failure to state a claim. Thus, to the extent that Sahagen's arguments in opposition to the instant motion are deemed to be objections to Thornapple's statement of account, such objections are untimely and do not weigh against the probability that Thornapple will succeed on the merits of its account-stated claim. In sum, it is more likely than not that Thornapple will succeed on the merits of its account-stated claim because Thornapple has produced evidence to establish the elements of its account-stated claim, and Defendants have not produced any evidence to demonstrate that Sahagen objected to Thornapple's invoice at any time prior to the commencement of litigation. See Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398, 409 (S.D.N.Y. 2003) (granting summary judgment to plaintiff on account-stated claim where defendant could not produce any evidence to show that it had objected to plaintiff's invoices prior to start of litigation).[1]

---

[1]Sahagen's arguments are not only insufficient to counter Thornapple's claim that it is likely to prevail on the merits, they also are not credible. Specifically, the Court cannot credit Sahagen's assertion that he believed Thornapple's attempts to collect from Sahagen to be mere "clerical error". Thornapple invoiced Sahagen for an amount in excess of $115,000, sent six reminder invoices, and finally sent a letter in which Conner offered to meet with Sahagen and discuss a payment plan. Common sense suggests that, if Sahagen actually believed Thornapple's invoicing was mere "clerical error", Sahagen would have communicated with Thornapple to protest the invoice and avoid

It also should be noted that the absence of Sahagen's signature on the retainer agreement is irrelevant to the determination of whether Thornapple is likely to prevail on the merits.  As Thornapple correctly observes, the fact that the retainer agreement was not signed does not diminish the likelihood that Thornapple will prevail on its claim, because "Sahagen does not plead the statute of frauds, nor is it a barrier to Thornapple, since no writing is required to hire an expert witness [under N.Y. General Obligations Law 5-701]." (Pl. Mem. 6.)  Even if the unsigned retainer agreement itself did not form the basis of an express agreement between the parties as to the balance owed by Defendants, Sahagen's remittance of partial payments and receipt of Thornapple's invoice without objection, as noted above, are sufficient to give rise to an implied agreement upon which an account-stated claim may be based.  Thus,

---

further confusion.

The Court also is taken aback by Sahagen's claim that he believed that the $40,000 that he had paid to Thornapple as of December 13, 2004 was more than sufficient compensation for all of the work that Thornapple performed.  After Thornapple's remittance of the final payment of $30,000, on December 13, 2004, Thornapple continued to work on Sahagen's behalf.  Specifically, Thornapple expended more than 220 billable hours after December 13, 2004, or more than half of Thornapple's total work.  Sahagen does not deny that he was aware that Thornapple charged $375 per hour and reasonably expected to be paid for this work, or that Sahagen and his attorneys had assured Thornapple that it would be paid for its work.  Although Sahagen now claims that Thornapple's work was of inferior quality and undeserving of more than $40,000, the fact remains that Sahagen permitted Thornapple to work far in excess of $40,000 in billable hours and, while that work was ongoing, voiced no objection to the price or quality of Thornapple's services.  Sahagen's instant claim that Thornapple deserves no more than $40,000 functions more as an admission of Sahagen's bad faith than it does as a valid argument in opposition to Thornapple's application for an attachment.

to the extent that Sahagen believed that he could not be billed
for the work performed by Thornapple because he did not sign the
retainer agreement, this demonstrates merely that Sahagen is
mistaken about the applicable law and does not weigh against the
probability that Thornapple will succeed on its claims.

Thornapple also has met the third statutory requirement
set forth in CPLR section 6212(a), that the amount sought to be
attached exceeds all known counterclaims.  Sahagen has not
asserted any counterclaims, nor are the existence of any
colorable counterclaims to be inferred from any of Sahagen's
submissions to the Court.

In sum, Thornapple has satisfied the statutory
requirements for obtaining an order of attachment under sections
6201(1) and 6212(a) of the CPLR.

_Need for Attachment for Security Purposes_

In addition to meeting the statutory requirements for
attachment, Thornapple must show that Defendants' financial
position and conduct pose a significant risk of the enforcement
of a future judgment. <u>Ames v. Clifford</u>, 863 F. Supp. at 177.
Because pre-judgment attachment in aid of security under section
6201(1) "serves to protect the plaintiff against defendant's
ability to pack his bags, abandon his place of convenience within
the state, and remain at his permanent residence outside the
reach of New York enforcement procedures . .. the courts focus .
. . on whether there is a likelihood that the defendant will have

14

adequate assets within the state to respond to a judgment against

him." ITC Entertainment, Ltd. v. Nelson Film Partners, 714 F.2d

217, 221 (2d Cir. 1983).  Courts have granted orders of

attachment in aid of security against a non-domiciliary defendant

after finding that the defendant did not have sufficient assets

in New York.  See, e.g., id. (upholding order of attachment where

it was undisputed that defendant did not have sufficient assets

in New York to satisfy a potential $ 2.7 million judgment against

him); County of Oswego Indus. Dev. Agency v. Fulton Cogeneration

Assocs., No. 5:05 Civ 926, 2006 U.S. Dist. LEXIS 24375 (N.D.N.Y.

Mar. 22, 2006) (ordering attachment where defendant owed

significant sums to other creditors and had insufficient assets

in New York to satisfy potential judgment); Pena v. Morgan, 149

F. Supp. 2d 91 (S.D.N.Y. 2001) (ordering attachment in aid of

security where most of defendant's assets were outside of New

York); Dic Animation City, Inc. v. McNaught Syndicate, No. 92

Civ. 4859, 1993 U.S. Dist. LEXIS 17974 (S.D.N.Y. Dec. 16, 1993).

    Here, it is undisputed that Sahagen has no assets

within New York that could satisfy a judgment in Thornapple's

favor.  As Thornapple asserts, and Sahagen does not deny, the

award from the settlement in Tilles is "the only money or other

asset of Sahagen's that will be in New York, subject to this

court's order, available to satisfy Thornapple's eventual

judgment." (Declaration of Dennis M. Rothman ("Rothman Decl.") ¶

13).  Such property, of course, is extremely liquid, and easily

transferred out of New York by Defendants. See Graubard Mollen

15

Dannett & Horowitz v. Kostantinides, 709 F. Supp. 428, 432

(S.D.N.Y. 1989) (finding attachment under CPLR 6201(1)

appropriate where plaintiff sought to attach plaintiff's bank

account, because "[t]hese accounts, by nature, are liquid and can

be easily transferred from the jurisdiction by a simple telephone

call" and "if plaintiff were then to recover a judgment against

the defendants, plaintiff would be in the inauspicious position

of having to chase defendants" to other venues).  Sahagen's lack

of assets in New York, apart from the easily transferable cash

that Sahagen will receive from the settlement in Tiles, thus

weighs in favor of attachment.

      In addition, Thornapple states, with record support,

that Sahagen has a history of unpaid judgments, specifically, a

judgment for $250,000 in New England Phoenix Co. v. Peter

Sahagen, No. 03 Civ. 107S, (D.R.I. May 9, 2005) ("New England

Phoenix Co.") which, as of the date of the Court's Order of

February 22, 2007, remained unpaid.  Sahagen concedes that he has

failed to pay the judgment in New England Phoenix Co., but offers

as an excuse the fact that his "cash liquidity was diminished

drastically" and states that he settled the Tiles matter "in

order to be able to deal with these liabilities." (Sahagen Aff. ¶

5.)  Sahagen's claim of financial distress, however, does not

militate against a grant of attachment.  Although it is true, as

Defendants contend, that an order of attachment should not be

granted solely in order to permit a plaintiff to obtain priority

over other creditors, see Ames v. Clifford, 863 F. Supp. 175,

16

178, a defendant's financial instability may justify a plaintiff's fear that a potential judgment will not be satisfied and thus provide a ground for an attachment. See, e.g., Elton Leather Corp. v. First General Resources Co., 138 A.D.2d 132 (App. Div. 1st Dep't 1988) (attachment warranted where the defendants were in financial distress, had not made timely payments to two secured creditors, and had violated the provisions of a credit agreement).  Sahagen's inability to pay the judgment in New England Phoenix Co. justifies Thornapple's reasonable fear that a judgment in its favor may be difficult to enforce.  Thornapple's fear of non-payment is especially justified where it is undisputed that Thornapple received express assurances from Defendant's attorneys, since proven hollow, that Thornapple "was at no risk of not being paid for Thornapple's services, and that Sahagen was a multi-millionaire capable of paying." (Conner Aff. ¶ 7.)

    Finally, Thornapple claims that attachment should be granted because Sahagen has behaved evasively in this and other actions.  Thornapple points, among other things, to the considerable difficulty it encountered in serving Sahagen with process and the fact that Sahagen was sanctioned for discovery abuse in VGS, Inc. v. Castiel, No. 17995, 2001 Del. Ch. LEXIS 117 (Del. Ch. Sept. 25, 2001), an action in Delaware Chancery Court in which Sahagen was a counterclaim defendant.

    Thornapple's statements and the record of this case show that Sahagen indeed was difficult to serve.  Thornapple's

process server was unable to locate Defendants at the California address that had been originally provided to Conner. After thus failing to locate Defendants at the address that Defendants had provided, Thornapple's counsel asked Sahagen's attorney whether he would accept service on Sahagen's behalf; Sahagen's attorney refused to accept service and refused to communicate the request to Sahagen.  Thornapple was forced to subpoena phone records and hire an investigator in an effort to locate Sahagen. Even after Rothman and an investigator tracked down Sahagen at the federal courthouse, where he was appearing in the <u>Tilles</u> matter, and handed him the summons and complaint, "Mr. Sahagen did not take the pleading from the investigator . . . [but] let it drop to the floor and went into Judge Baer's courtroom." (Rothman Decl. ¶ 12.)  Thornapple also notes that Sahagen proved difficult to serve in <u>New England Phoenix Co.</u>, as indicated by language in the order of a magistrate judge in that case.  Defendants do not dispute Thornapple's assertions, except to state that Thornapple is precluded from complaining about the difficulties of serving Defendants because, under Federal Rule 4(d), Thornapple could have mailed the complaint to Defendants with a request for waiver of service, but chose not to do so.[2]

---

[2] Defendants' argument implies that, had Defendants received the complaint in the mail with a request for waiver, Defendants would have responded by waiving service.  However, the Court doubts that Defendants would have been so ready to accept the mailed complaint and waive service, given the substantial resistance made by Defendants to Thornapple's attempts to effect personal service.

18

Thornapple also points to Sahagen's abuse of the
judicial process in <u>VGS, Inc.</u>, where the Delaware court
sanctioned Sahagen after finding that "his failures to appear [at
three scheduled depositions] were undertaken to disrupt the
orderly procession of the case."  2001 Del. Ch. LEXIS 117, at
*11.  Furthermore, a check of the Southern District's docket
reveals that, in the <u>Tilles</u> matter, Sahagen failed to attend a
mediation conference despite a court order directing him to do so
and was subsequently ordered to reimburse the defendant for her
costs in traveling from Florida to New York in order to attend
the conference.  <u>See</u> <u>Tilles</u>, Memo Endorsed Letter, Oct. 27, 2006
(Doc. #10).

Sahagen's conduct in this and other actions, standing
alone, would not provide a sufficient basis for a grant of pre-
judgment attachment in aid of security.  Nevertheless, the Court
finds that Sahagen's uncooperative behavior in accepting service
of process in this case and his failure to appear at depositions
and a mediation conference in other actions, when viewed in light
of Defendants' lack of assets in New York and failure to pay the
judgment in <u>New England Phoenix Co.</u>, weigh in favor of granting
the order of attachment.  Courts have considered the conduct of a
defendant, both before and during litigation, in determining
whether attachment was warranted.  <u>See, e.g.</u>, <u>ITC Entertainment,
Ltd.</u>, 714 F.2d at 219 (finding that defendant "conducted business
in a less than exemplary manner"); <u>Pena</u>, 149 F. Supp. 2d at 94
(finding attachment warranted in part because defendant was

"evasive" in identifying location of assets).  Sahagen's
intractability in accepting service indicates that Sahagen also
may prove to be less than forthcoming in complying with a
judgment of this Court.  Similarly, Sahagen's refusals to comply
with court directives in other actions indicate that Sahagen may
not readily comply with a judgment of this Court rendered in
Thornapple's favor.  While Sahagen's conduct as a litigant in
unrelated matters is not relevant to the merits of Thornapple's
claims, such behavior does justify Thornapple's fear that
enforcement of a judgment will prove difficult and thereby
militates in favor of attachment.

          Defendants assert one argument in opposition to
Thornapple's claim that attachment is needed in aid of security.
Defendants contend that the test for a discretionary grant of
attachment under CPLR section 6201(1) "is precisely the same as
that applied by the Court where the moving party relies on CPLR
Section 6201(3)." (Pl. Mem. 3.) As Defendants point out,
attachment under section 6201(3) requires a plaintiff to show by
affidavit or other evidence that defendant is disposing or is
about to dispose of assets with the intent to defraud the
plaintiff or frustrate a judgment that might be rendered in
plaintiff's favor. See Ashland Oil, Inc. v. Gleave, 540 F. Supp.
81, 84 (W.D.N.Y. 1982) (citing N.Y. CPLR § 6201(3)). Attachment
should not be granted in this case, Defendants argue, because
Thornapple has failed to show that Defendants have the intent to
dispose of assets or defraud Thornapple, as required under CPLR

section 6201(3).

It is irrelevant, however, that Thornapple has failed
to allege bad faith or fraudulent intent on the part of
Defendants.  Although section 6201(1) requires Thornapple to show
that "drastic action is required for security purposes," Buy
This, Inc., 178 F. Supp. 2d at 383, a need for "drastic action"
may be shown without necessarily alleging or attempting to prove
bad faith or fraudulent intent.  As discussed above, a need for
drastic action may be shown by establishing, inter alia, that a
defendant has insufficient assets within New York or that a
defendant's financial condition poses the risk of enforcement of
a future judgment.  Thus, contrary to Defendants' argument, the
showings required by sections 6021(1) and 6201(3) are not
identical, and Thornapple is not required to allege Defendants'
bad faith or fraudulent intent in order to obtain an order of
attachment.

Finally, in determining whether to grant security-based
attachment of the assets of a non-domiciliary, a court should
consider not only the plaintiff's need for attachment, but also
the effect of the attachment upon the defendant.  See Lehman Bros.
Fin. S.A. v. Shenkman, No. 01 Civ. 7701, 2001 U.S. Dist. LEXIS
13446 (S.D.N.Y. Aug. 31, 2001).  Here, Defendants have not
claimed that the attachment of funds from the Tilles settlement
will cause them any harm.  Furthermore, the Court has made the
order of attachment conditional upon Thornapple's posting of an

21

undertaking of $10,000.[3]  The posting of the bond is sufficient
insurance against any harm that could befall Defendants as a
result of the attachment. See Pena, 149 F. Supp. 2d at 94.

In sum, Thornapple has met the statutory requirements
for pre-judgment attachment, under CPLR sections 6201(1) and
6212(a), and has shown a need for attachment in aid of security.

## CONCLUSION

Thornapple has met the statutory grounds for pre-
judgment attachment under N.Y. CPLR sections 6201(1) and 6212(a).
Thornnapple also has shown that drastic action is required for
security purposes.  Thornapple's posting of an undertaking is
sufficient to protect against any harm that may befall Defendants
as a result of the attachment.  Attachment of $140,000 of the
funds payable to Sahagen as a result of the settlement in Tilles,
which is an amount sufficient to include Thornapple's accounts-
stated claim for $115,006.46 plus accrued interest and possible
expenses, therefore is warranted.

By letter dated March 2, 2007, counsel for Defendants
informed the Court that the sum of $140,000 was deposited into
Defendants' counsel's attorney escrow account.  Thornapple sent a
letter in response, dated March 5, 2007, in which it expressed
concern that the levy imposed by the Court's Order of February
22, 2007 will become void at the expiration of ninety days,

---

[3]Thornapple filed a Notice of Filing of Undertaking and
posted the required bond on March 2, 2007.

pursuant to N.Y. CPLR § 6214(e), if the U.S. Marshal or Thornapple's counsel, which stands in the Marshal's shoes, does not take actual custody of the attached funds.  Thornapple therefore has requested that the $140,000 be transferred from Defendants' counsel's escrow account and deposited into Thornapple's attorney escrow account.

Thornapple's request for transfer of the funds is denied.  However, this Court's Order of February 22, 2007 is amended to the extent that the attached funds shall not be subject to levy by the U.S. Marshal or Thornapple's counsel. Rather, it is hereby ordered that the sum of $140,000 shall remain in Defendants' counsel's escrow account pending final judgment.

**SO ORDERED.**

**Dated:**          **New York, New York**
                    **March  12 , 2007**

                                        JOHN F. KEENAN
                              United States District Judge

23